IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NOE BELTRAN, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-0409 |
| | § | |
| DOUGLAS DRETKE, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Noe Beltran, an inmate of the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed a federal petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging a state court conviction for felony murder.  Respondent Douglas Dretke filed a motion for summary judgment.  (Docket Entry No. 6).  After reviewing the record, the pleadings, and the applicable law, including the Anti-Terrorism and Effective Death Penalty Act's ("AEDPA") deferential standard of review, the court will grant Respondent's motion for summary judgment and deny Beltran's petition.  The Court will not certify any issue for appeal.  The Court sets forth the reasons for its adjudication below.

## I.  Factual Background and Procedural History

Beltran, a member of the Texas Syndicate prison gang in the TDCJ-CID Ellis One Unit, helped another inmate repeatedly stab Ramon Gomez, Jr., because Gomez allegedly stole drugs from

the gang. *See Beltran v. State*, No. 70,888 (Tex. Crim. App. April 28, 1993) (unpublished). After Gomez died of his wounds, the State of Texas indicted Beltran for capital murder. The indictment alleged, and the prosecution argued at trial, that Beltran murdered Gomez for remuneration. The jury instructions allowed the jury to convict Beltran for the lesser-included-offense of murder if it entertained a reasonable doubt as to the remuneration element of the capital-murder charge. The jury convicted Beltran of capital murder and answered Texas' special issue questions in a manner requiring the imposition of a death sentence. On direct appeal, the Court of Criminal Appeals reversed Beltran's conviction and ordered an acquittal, because the evidence insufficiently supported the remuneration element. *Id.*

The State of Texas again tried Beltran for killing Gomez, this time only seeking a conviction for the offense of murder. The jury convicted Beltran and assessed his punishment at fifty years incarceration, with a fine of $10,000. *State v. Beltran*, No. 18655-C (278th District Court Walker County Texas Oct. 25, 2001). Beltran filed an appeal; the Court of Appeals for the Fourteenth District of Texas affirmed the judgment and sentence. *Beltran v. State*, 99 S.W.3d 807 (Tex. App.-Hous. [14th Dist.] 2003, pet. ref'd) The Texas Court of Criminal Appeals refused Beltran's petition for discretionary review. Beltran did not seek post-conviction habeas relief in the state courts.[1] The instant federal habeas action followed.

## II.  Grounds for Relief

Beltran raises the following claims in his petition:

---

[1]     Beltran unsuccessfully filed a pretrial writ of habeas corpus raising a claim of double jeopardy. *Beltran v. State*, No. 01–97-00105-CR (Tex. App. – Houston [1st Dist.] Mar. 30, 2000).

1.  The Constitution's double-jeopardy clause should have prevented his retrial for Gomez's murder.

2.  The law-of-the-case doctrine also should have deterred his retrial.

3.  The State of Texas failed to indict him in a timely manner after the reversal of his initial conviction.

4.  The trial court allowed prejudicial evidence to come before the jury in violation of Texas' evidentiary rules.

5.  The trial court violated Beltran's right to a fair trial and impinged on his presumption of innocence by referring to him as a "dog" in front of the jury.

Respondent filed a summary judgment motion (Docket Entry No. 6), to which Beltran responded (Docket Entry Nos. 10, 12).

## III.  Standard of Review

Before considering Beltran's claims, "one must recall the properly limited role of a federal court when a habeas petitioner challenges a state court conviction." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993).  Federal habeas proceedings honor the "presumption of finality and legality [that] attaches to [a petitioner's] conviction and sentence." *Barefoot v. Estelle*, 103 S.Ct. 3383, 3392 (1983).  Since 1996, federal courts have given effect to the traditional limits on habeas review through the AEDPA's deferential standard.  The AEDPA "embodies the principles of federalism, comity, and finality of judgments," *Evans v. Cockrell*, 285 F.3d 370, 374 (5th Cir. 2002), "substantially restrict[ing] the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000); *see also Woodford v. Visciotti*, 123 S.Ct. 357, 360 (2002) ("[Section] 2254(d)'s highly deferential standard for evaluating state-court rulings . . . demands that state court decisions be given the benefit of the doubt.").  Under the AEDPA, a federal

3

court cannot grant habeas relief on issues adjudicated on the merits in state court unless (1) the legal determinations or mixed legal and factual adjudications are contrary to, or an unreasonable application of, clearly established federal law; or (2) the state factual decisions are unreasonable in light of the evidence. *See* 28 U.S.C. § 2254(d)(1) and (2); *Williams v. Taylor*, 120 S.Ct. 1495, 1519 (2000).

The Supreme Court holds that a state court decision is "contrary to" federal law when that court arrives at a conclusion "opposite to that reached by [the Supreme Court] on a question of law" or "the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 120 S.Ct. 1495, 1523; *see also Bell v. Cone*, 122 S.Ct. 1843, 1852 (2002); *Early v. Packer*,123 S.Ct. 362, 364 (2002). A state court unreasonably applies federal law when it "identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the particular facts of the particular state prisoner's case" or when "the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407.

The AEDPA also controls federal review of factual issues raised by a habeas petitioner. The AEDPA "overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party." *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002). A federal habeas court must also presume the underlying factual determinations of the state court to be correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Miller-El v.*

4

*Cockrell*, 123 S.Ct. 1029, 1042 (2003).[2]  Under 28 U.S.C. § 2254(d)(2) "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]"  *Miller-El*, 123 S.Ct. at 1041.

Notwithstanding a petitioner's compliance with 28 U.S.C. § 2254(d), no Supreme Court case "ha[s] suggested that a writ of habeas corpus should automatically issue if a prisoner satisfies the AEDPA standard[.]"  *Horn v. Banks*, 122 S.Ct. 2147, 2151 (2002); *see also Robertson v. Cain*, 324 F.3d 297, 306 (5th Cir. 2003) (finding that 28 U.S.C. § 2254(d) "does not require federal habeas courts to grant relief reflexively").  A habeas petitioner meeting his burden under the AEDPA must still comply with jurisprudential principles, such as the harmless error doctrine and the nonretroactivity principle, that bridle federal habeas relief.  *See Thacker v. Dretke*, 396 F.3d 607, 612 n.2 (5th Cir. 2005).  Any error cannot require habeas relief unless it "ha[d] a 'substantial and injurious effect or influence in determining the jury's verdict.'"  *Robertson*, 324 F.3d at 304, *quoting Brecht v. Abrahamson*, 113 S.Ct. 1710, 1714 (1993).  Nor would it require the creation of new constitutional law.  *See Banks*, 122 S.Ct. at 2050, *citing Teague v. Lane*, 109 S.Ct. 1060 (1989).

Federal courts hold those pleadings filed by individuals proceeding *pro se*, such as those filed by Beltran, to a less stringent standard than those drafted by attorneys.  *See Haines v. Kerner*, 92 S.Ct. 594, 596 (1972); *Alexander v. Ware*, 714 F.2d 416, 419 (5th Cir. 1983).  Federal law entitles

---

[2]      "The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact."  *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004) ("As a federal habeas court, we are bound by the state habeas court's factual findings, both implicit and explicit."); *Goodwin v. Johnson*, 132 F.3d 162, 183-84 (5th Cir.1997) (findings of fact can be implied from explicit conclusions of law).

*pro se* pleading to a liberal construction that includes all reasonable inferences that the court reasonably can draw from them. *See Haines*, 92 S.Ct. at 596; *Hulsey v. Owens*, 63 F.3d 354, 355 n. 1 (5th Cir. 1995); *Watts v. Graves*, 720 F.2d 1416, 1418 (5th Cir. 1983).  However, "the notice afforded by the Rules of Civil Procedure and the local rules" suffices to put a *pro se* party on notice of his burden in opposing a summary judgment motion.  *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).


## IV. <u>Analysis</u>

A.   <u>Reliance on State Law</u>

Respondent seeks summary judgment on several of Beltran's claims because he bases them only on state law.  The role of federal habeas proceedings is "secondary and limited" and is not intended to provide "forums in which to relitigate state trials." *Barefoot v. Estelle*, 103 S.Ct. 3383, 3392 (1983).  Under 28 U.S.C. § 2254(a) a federal court may entertain a petition for writ of habeas corpus only "on the ground that [the state prisoner] is in custody in violation of the Constitution or laws or treaties of the United States."  In other words, a federal habeas court "asks only whether a constitutional violation infected the trial," *Pemberton*, 991 F.2d at 1223; it does not sit as a super state appellate court.  *See, e.g., Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986) (observing that "[f]ederal courts do not sit as courts of appeal and error for state court convictions").  Therefore, a federal habeas petitioner will not obtain relief if he presents errors of state law, unless he also demonstrates a federal issue.  *See Estelle v. McGuire*, 112 S.Ct. 475, 480 (1991).  Simply, "it is not the role of the federal habeas court to reexamine state-court determinations of state-law questions." *Rowell v. Dretke*, 398 F.3d 370, 375 (5th Cir. 2005).

Beltran recognizes that he relies only on state law with respect to some of his claims, but counters that, as an untrained, *pro se* petitioner, he feared introducing federal constitutional arguments for the first time in his federal petition. Beltran asks this court to employ its liberal reading of *pro se* pleadings and find a federal constitutional basis for his arguments. Beltran's fear of including new federal arguments in his petition only highlights the fact that he failed to exhaust any federal permutation of his claims in state court. While this court must view *pro se* pleadings under a more forgiving light than those drafted by counsel, this court cannot ignore the habeas exhaustion requirement on that basis. Both the exhaustion doctrine and the failure to rely on federal law doom several of Beltran's claims. As the court will discuss further with respect to each deficient argument, this court cannot grant habeas relief on unexhausted permutations of a thoroughly state-law claim.

B.   Double Jeopardy

Beltran contends that his second prosecution for Gomez's murder violated the constitutional protection against double jeopardy. After his initial conviction for capital murder and his death sentence, the Court of Criminal Appeals found that insufficient evidence supported the remuneration element of the capital charge, reversed the lower court's judgment, and remanded to the trial court for an acquittal. *Beltran v. State*, No. 70,888. In 1995, the State of Texas reindicted Beltran, this time for the offense of murder. Beltran argues that his prosecution following the order of acquittal put him a second time in jeopardy for the same offense, resulting in the denial of his constitutional rights.

"The Double Jeopardy Clause of the United States Constitution prohibits a second prosecution for the same offense after acquittal, a second prosecution for the same offense after

conviction, and . . . successive punishments for the same offense."   *North Carolina v. Pearce*, 89

S.Ct. 2072, 2076 (1969); *Doyle v. Johnson*, 235 F.3d 956, 958 (5th Cir. 2000). The Supreme Court

has explained the purpose of the Double Jeopardy Clause as follows:

> Although articulated in different ways by this Court, the purposes of, and the policies
> which animate, the Double Jeopardy Clause in this context are clear. 'The
> constitutional prohibition against 'double jeopardy' was designed to protect an
> individual from being subjected to the hazards of trial and possible conviction more
> than once for an alleged offense. . . . The underlying idea, one that is deeply
> ingrained in at least the Anglo-American system of jurisprudence, is that the State
> with all its resources and power should not be allowed to make repeated attempts to
> convict an individual for an alleged offense, thereby subjecting him to
> embarrassment, expense and ordeal and compelling him to live in a continuing state
> of anxiety and insecurity, as well as enhancing the possibility that even though
> innocent he may be found guilty.'

*Serfass v. United States*, 95 S.Ct. 1055, 1062 (1975), *quoting Green v. United States*, 78 S.Ct. 221,

223 (1957).  The Double Jeopardy clause does not prevent further prosecution every time that a

court overturns a criminal judgment, but it "precludes a second trial once the reviewing court has

found the evidence legally insufficient." *Burks v. United States*, 98 S.Ct. 2141, 2150-51 (1978); *see

also Monge v. California*, 118 S.Ct. 2246, 2250 (1998) ("[W]here an appeals court overturns a

conviction on the ground that the prosecution proffered insufficient evidence of guilt, that finding

is comparable to an acquittal, and the Double Jeopardy Clause precludes a second trial."); *Tibbs v.

Florida*, 102 S.Ct. 2211, 2218 (1982)  (finding that *Burks* "carved a narrow exception from the

understanding that a defendant who successfully appeals a conviction is subject to retrial").  If an

appellate court  reverses a conviction for insufficiency of the evidence, the decision holds that the

case against the defendant was so deficient that the trial court should have entered a judgment of

acquittal, instead of submitting the case to the jury.  *Lockhart v. Nelson*, 109 S.Ct. 285, 39 (1988),

*citing Burks*.  .

8

Beltran contends that his retrial for murder after an acquittal of capital murder placed him twice in jeopardy for the same crime. Beltran challenged the renewed indictment on double-jeopardy grounds twice before trial in both habeas and appellate proceedings. On appeal from his conviction and sentence, the intermediate appellate court followed traditional Texas law and held that "a defendant whose *capital murder* conviction is reversed for insufficient evidence of remuneration can be retried for *murder*." *Beltran*, 99 S.W.3d at 810 (italics added), *citing Ex parte Granger*, 850 S.W.2d 513, 515 (Tex. Crim. App. 1993).

Texas prosecuted Beltran once, allowing the jury the opportunity to convict him of either murder or capital murder. The Court of Criminal Appeals acquitted on the capital murder charge, but did not enter a conviction for the lesser offense. The Supreme Court has refused to decide the issue presently before the court: "'the question of whether the State could, consistent with the Double Jeopardy Clause, try [a defendant] for a lesser included offense in the event that his [conviction for the greater offense] is voided [based on insufficiency of the evidence].'" *Anderson v. Mullin*, 327 F.3d 1148, 1155 (10th Cir.2003), *quoting Greene v. Massey*, 98 S.Ct. 2151, 2154 n.7 (1978). In that respect, this court would be reluctant to grant habeas relief because Beltran cannot show that he based his double-jeopardy claim on "clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). The Fifth Circuit, however, has found that Texas law creates no constitutional deprivation by providing for a retrial in the circumstances raised by this case. *See Shute v. State of Tex.*, 117 F.3d 233, 239 (5th Cir. 1997).

Texas' retrial of Beltran did not invoke the same concerns that underlie double-jeopardy jurisprudence. Here, Beltran's first jury essentially found him guilty of the crime of murder, only becoming capital murder by the inclusion of the aggravating element of remuneration. The Court

of Criminal Appeals reversed that holding only insofar as no reasonable jury could find sufficient evidence to support the aggravating factor; the appellate court in no way called for an acquittal based on the remaining elements of his conviction. In reversing Beltran's capital-murder conviction, the Court of Criminal Appeals could have entered a conviction of simple murder, as the first jury properly found all the elements of that lesser-included offense. *See Shute*, 117 F.3d at 239. Instead, the Texas courts sent the case back to the lower court, allowing Beltran a second opportunity to demonstrate his innocence. "[T]his is not a case in which the State was presented with multiple opportunities to convict and punish an individual for a single offense; rather, quite the opposite is true. At his request, [Beltran] was given another chance to rebut the State's evidence that he committed the murder even though the State had already obtained a conviction for that offense." *Beverly v. Jones*, 854 F.2d 412, 415 (11ᵗʰ Cir. 1988). "The state had no obligation to grant [Beltran] an opportunity to obtain an acquittal for a crime of which he already had been convicted. [Beltran] cannot complain now of this act of judicial grace." *Shute*, 117 F.3d at 239.

As no Supreme Court precedent requires relief, and circuit precedent indicates that his retrial complied with constitutional expectations, the Texas court's adjudication of this claim was not contrary to, or an unreasonable application of, federal law. *See* 28 U.S.C. § 2254(d)(1).

C.    Law-of-the-Case Claim

Beltran contends that, because the Court of Criminal Appeals ordered an acquittal of his capital murder charge, the law-of-the-case doctrine prevented his retrial for murder. "The law of the case doctrine is a restriction self-imposed by the courts on themselves in the interests of judicial efficiency, which generally operates to preclude a reexamination of issues decided on appeal, either by the district court on remand or by the appellate court itself upon a subsequent appeal." *United*

*States v. Arce-Jasso*, 389 F.3d 124, 131 (5th Cir. 2004) (quotations omitted).  Similar in essence to his double-jeopardy claim, Beltran argues that the Court of Criminal Appeals' order requiring the lower court to enter an acquittal should have prevented his retrial.

Respondent maintains that, because Beltran failed to exhaust this claim in state court, this Court cannot consider its merits.  Applicants seeking habeas relief under § 2254 are required to exhaust all claims in state court prior to requesting federal collateral relief.  *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir.1998).   The exhaustion doctrine is grounded in concerns of federal/state comity, demanding that "[s]tate courts should have the first opportunity to make right their mistakes."  *Deters v. Collins*, 985 F.2d 789, 794 (5th Cir. 1993).  The exhaustion doctrine has been codified in § 2254 and provides that habeas relief shall not be granted on unexhausted claims.  *See* 28 U.S.C. § 2254(b)(1).

Beltran raised his law-of-the-case argument in the intermediate appellate court, but did not include that claim in his petition for discretionary review to the Court of Criminal Appeals.  Beltran failed to present the substance of this claim to the highest Texas court.  Beltran's failure to exhaust his law-of-the-case claim procedurally bars it from federal consideration.  "A procedural default . . . occurs when a prisoner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'"  *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997), *quoting Coleman v. Thompson*, 111 S.Ct. 2546, 2557 n.1 (1991); *see also Fuller v. Johnson*, 158 F.3d 903, 906 (5th Cir. 1998).  Article 11.07 § 4 of the Texas Code of Criminal Procedure generally prohibits a Texas court from considering a successive habeas application on the merits.  The Fifth Circuit holds that Article 11.07 § 4 is an adequate state procedural bar, finding that the rule is strictly

and regularly enforced.  *See Smith v. Johnson*, 216 F.3d 521, 523 (5th Cir. 2000); *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995).

While Article 11.07 §4 authorizes the filing of a successive state application under certain circumstances, Beltran does not ask this Court to dismiss this case so that he can file a successive habeas application or show that he meets the statutory requirements to file such a pleading.  A Texas court considering Beltran's unexhausted claim in a successive habeas application would likely invoke Texas's abuse of the writ doctrine to procedurally bar that claim, which consequently bars federal consideration.

"An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).  Regardless of whether Beltran has adequately exhausted his arguments, he fails to raise a cognizable habeas corpus claim.  Federal habeas relief exists only for claims "on the ground that [a petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Beltran does not base this claim on any federal law or constitutional provision, except insofar as his law-in-the-case argument subsumes his double-jeopardy claim, that would require this Court to grant relief.  *See Arce-Jasso*, 389 F.3d at 131 ("The law of the case doctrine is a restriction self-imposed by the courts on themselves in the interests of judicial efficiency[.]"); *Grant v. Hoke*, 921 F.3d 28, 32 (2[d] Cir. 1990) (finding that a law-of-the-case claim raised only issues of state law).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Trevino v. Johnson*, 168 F.3d 173, 184 (5th Cir. 1999), *quoting Estelle v. McGuire*, 112 S.Ct. 475, 480 (1991); *see also Collier v. Cockrell*, 300 F.3d 577, 585 (5th Cir. 2002) (finding that claims based only on state law do "not state a claim for federal

habeas relief"); *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (holding that "claims that the trial court improperly applied state law do not constitute an independent basis for federal habeas relief").  Even if this court could consider the merits of Beltran's law-of-the-case claim, he provides no federal constitutional support for his arguments.  The Court will deny this claim.

D.    Failure to Secure a Timely Second Indictment

Beltran argues that the State of Texas violated state law by not seeking his second indictment in a timely manner.  Texas law sharply limits the State's ability to incarcerate a defendant before trial without the issuance of an indictment.  *See* TEX. CODE CRIM. PRO. art 32.01 ("When a defendant has been detained in custody or held to bail for his appearance to answer any criminal accusation, the prosecution, unless otherwise ordered by the court, for good cause shown, supported by affidavit, shall be dismissed and the bail discharged, if indictment or information be not presented against such defendant on or before the last day of the next term of the court which is held after his commitment or admission to bail or on or before the 180th day after the date of commitment or admission to bail, whichever date is later.").  Beltran contends that the State secured the second indictment against him well outside the time allowed by statute.

When Beltran raised this argument before the intermediate appellate court, that court found that he waived the claim by not making a timely objection to the second indictment.  *See Beltran*, 99 S.W.3d at 810 ("Appellant did not file his motion to dismiss until January 2000, almost five years after the indictment issued.  This was too late.").  Respondent, however, does not argue that Texas' refusal to hear Beltran's timeliness argument constitutes a procedural bar that this Court must honor on federal review.  Instead, Respondent contends that Beltran bases this claim purely on state law, and that no federal precedent would authorize habeas relief.

13

While it appears that independent and adequate state law would prevent federal consideration of Beltran's untimely indictment claim, he has provided no federal basis for this Court to grant relief. Beltran bases this claim entirely on state law and shows no controlling Supreme Court precedent that would require habeas relief. This Court, therefore, will deny his claim.

E.      Texas Evidentiary Rulings

Beltran raises three claims involving testimony presented at his trial concerning his membership in the Texas Syndicate. Beltran contends that Texas evidentiary law should have prevented the inclusion of the gang-affiliation testimony. Beltran makes no explicit reference to the federal constitution. Generally, "the proper interpretation of state law is *not* cognizable in federal habeas proceedings," *Beazley v. Johnson*, 242 F.3d 248, 261 (5th Cir. 2001). Insofar as Beltran bases his evidentiary-ruling claim on purely state law, this Court cannot revisit the state court's rejection of his arguments. *See Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995) (It is not the federal court's function to review the states' interpretation of its own laws.).

Even had Beltran exhausted a federal constitutional challenge to the introduction of gang-membership testimony, precedent limits the depth to which this Court can probe the integrity of the state court rulings. "[I]n reviewing state court evidentiary rulings, the federal habeas court's role is limited to determining whether a trial judge's error is so extreme that it constituted denial of fundamental fairness under the Due Process Clause of the Fourteenth Amendment." *Castillo v. Johnson*, 141 F.3d 218, 224 (5th Cir. 1998). The state courts provided a valid reason for allowing the introduction of the challenged testimony:

> Several inmates and fellow members of the gang testified at trial that the victim – the acting chairman of the Syndicate at the Ellis 1 unit – was making personal use of narcotics smuggled into prison by the gang for drug-trafficking activities. They testified appellant murdered the victim as retribution, and was rewarded by replacing

14

him as acting chairman.  Appellant's gang-affiliation was not only relevant but absolutely critical to show the motive for his crime.

*Beltran*, 99 S.W.3d at 810-11.  Beltran has not shown that the state court erred in this evaluation of the admissibility of the gang-affiliation testimony, much less that the error was so extreme as to result in the denial of his due-process rights.  The Court will deny this claim.

F.     Improper Judicial Comments

Finally, Beltran argues that comments by the trial court unfairly characterized him as a "dog," thus tainting his trial and impinging on his presumed innocence.  During jury selection, the trial court made the following comment in front of the potential jurors:

Any of you for any reason could not give an inmate a fair trial for any reason?  In other words, if you've been at TDCJ-CID so long that you're soured on the world or soured on Defendants or soured on – that's understandable but it wouldn't be right if you couldn't give a person who is an inmate a fair trial.  So if there is anybody there that can't give an inmate a fair trial speak up now or forever hold your peace.  Because this country, you know, if you read the papers, a dog will bite a child.  In this country the dog gets a trial.  So I'm telling you we are fair in this country.  That makes it more democratic. So listen to the lawyers and answer truthfully.

Tr. Vol. 2 at 44.  The record does not indicate that Beltran objected to the trial court's comment, but a discussion then ensued at the bench.  After the discussion the trial judge retracted his comment before the potential jurors:

Inmates are entitled to a fair trial.  If I'm calling him a dog I absolutely apologize. I didn't mean to offend him. . . .  I didn't mean to offend you.  I don't think he's a dog.  He's a human being and entitled to all the rights that all of us have. . . . I wasn't trying to be rude, crude, attractive.  I'm just trying to show you how important trial by jury is.

Tr. Vol. 2 at 44-45.  Beltran argues that the judge's reference to him as a "dog" prejudiced potential jurors against him and violated his constitutional rights.

The intermediate appellate court in this case imposed a procedural bar on Beltran's judicial-

15

comment claim: "We find this comment was not fundamental error. Thus, because appellant did not object, error has been waived." *Beltran*, 99 S.W.3d at 811.  Because the Court of Criminal Appeals denied Beltran's PDR without a written order, this court respects the intermediate appellate court's imposition of a procedural bar, apparently based on Texas' contemporaneous-objection doctrine. *See Goodwin v. Collins*, 910 F.2d 185, 187 (5th Cir. 1990) (honoring a procedural bar when "a state intermediate appellate court renders a decision, and the highest state court thereafter simply denies discretionary review").  Beltran objects to the procedural bar, inferring that counsel made an off-the-record objection.  This court, however, cannot reconsider the state court's interpretation of its own procedural law.  *See Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1999) ("Federal habeas courts lack jurisdiction . . . to review state court applications of state procedural rules."); *Sweet v. Delo*, 125 F.3d 1144, 1151 (8th Cir. 1997) ("If the highest court of Missouri concludes [an inmate's] claims have not been properly raised in state habeas proceedings, that's the end of the matter"); *Schlepped v. Groose*, 36 F.3d 735, 737 (8th Cir. 1994) (finding that "a state's misapplication of its own procedural rule is not cause for default" because "[a] federal court may not re-examine a state court's interpretation and application of state law").  Traditional limits on habeas practice prevent this court from considering whether the state courts erred in procedurally barring Beltran's claim. As he has not shown sufficient cause or actual prejudice to overcome that procedural hurdle, this Court cannot consider the merits of his improper-judicial-comment claim.

Even if Beltran overcame the procedural hurdles to the consideration of this claim, he has not shown that he merits habeas relief.  As noted by the intermediate appellate court, "[u]ndoubtedly, the trial judge's attempt at folksy humor was both reckless and injudicious. But we fail to see how any rational juror could construe it as a comment about appellant or the strength of

his case.  Even if that were possible, the judge immediately clarified this was not what he meant."

*Beltran*, 99 S.W.3d at 811.  The trial court swiftly and unequivocally retracted its inappropriate

statement, thus avoiding the possibility that it would taint his trial.  Beltran has simply not shown

that the trial court's comments infected his trial with fundamental unfairness.  If this court could

entertain the merits of Beltran's final claim, he has not shown an entitlement to habeas relief.


## V.  <u>Certificate of Appealability</u>

Under 28 U.S.C. § 2253, Beltran needs to obtain a Certificate of Appealability before he can

appeal this Memorandum and Order dismissing his petition.   To obtain a Certificate of

Appealability, Beltran must make a substantial showing of the denial of a constitutional right.

*Williams v. Puckett*, 283 F.3d 272, 276 (5th Cir. 2002).  To make such a showing, Beltran must

demonstrate that the issues are debatable among jurists of reason; that a court could resolve the

issues in a different manner; or that the questions are adequate to deserve encouragement to proceed

further.  *Lucas v. Johnson*, 132 F.3d 1069, 1073 (5th Cir. 1998).  For the reasons stated in this

Memorandum Opinion and Order, Beltran has not made a substantial showing of the denial of a

constitutional right.  *Newby v. Johnson*, 81 F.3d 567, 569 (5th Cir. 1996). The Court **DENIES** the

issuance of a Certificate of Appealability in this action.

### VI.  <u>Conclusion</u>

The Court **ORDERS** the following:

1.      Respondent's Motion for an Extension of Time to Answer (Docket Entry No. 5) and Beltran's Motion to Leave to File Points and Authorities in Support of Petitioner's Traverse (Docket Entry No. 11) are **GRANTED**.

2.      Respondent's motion for summary judgment (Docket Entry No. 6) is **GRANTED**.

3.      This action is **DISMISSED**, with prejudice.

4.      A Certificate of Appealability is **DENIED**.

**SIGNED** on this 13th day of September, 2005.


_____
                    JOHN D. RAINEY
            UNITED STATES DISTRICT JUDGE

18